UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELSA AVILA,

    Plaintiff,

v.                                               CASE No. 8:13-CV-379-T-TGW

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

    Defendant.

_____

## ORDER

The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[2] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as defendant in this action. See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

I.

The plaintiff, who was forty-six years old at the time of the administrative hearing and who has some college education, has worked as a home attendant, receptionist, and file clerk (Tr. 40, 147, 196, 239). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to mental problems, bipolar disorder, back problems, migraines, asthma, a bleeding disorder, and a skin allergy (Tr. 191). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a <u>de novo</u> hearing before an administrative law judge. The law judge found that the plaintiff has the following severe impairments (Tr. 23):

> a lumbar spine disc protrusion at L3-4, degenerative disc disease at L2-3, L4-5 and L5-S1, post-traumatic lumbar spine syndrome, a thoracic spine disc protrusion at T9-T10, post-traumatic upper trapezial strain, a left distal radius fracture status post closed treatment, chronic neck pain due to post-traumatic cervical spine syndrome, a cervical disc bulge at C4-5, asthma, chronic post-traumatic SI joint sprain, a mood disorder NOS, and a bipolar disorder.

He concluded that, with these impairments, the plaintiff has the residual functional capacity (Tr. 24-25):

> to lift and carry twenty pounds occasionally and ten pounds frequently. She can stand or walk for about six hours per eight-hour workday and sit for about six hours per workday, but needs a sit/stand option at will. The claimant can frequently push and pull (including operating hand controls) with her non-dominant left upper extremity, climb ramps and stairs, balance, stoop, kneel, crouch and crawl, and can occasionally climb ladders, ropes and scaffolds, and handle with her non-dominant left upper extremity. She must avoid concentrated exposure to hazards, fumes, odors, dusts, gases, poor ventilation, etc. The claimant can only perform simple 1-4 step, routine, repetitive tasks.

The law judge determined that these restrictions prevented the plaintiff from returning to her past relevant work (Tr. 29). However, based on the testimony of a vocational expert, the law judge found that there are jobs that exist in significant numbers in the national economy that the plaintiff could perform, such as information clerk and interviewer/survey worker (Tr. 29-30). Accordingly, the law judge decided that the plaintiff was not disabled (Tr. 30). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record

compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff's sole contention is that "[t]he Administrative Law Judge decision was in error in that the Administrative Law Judge substituted his opinion for that of uncontradicted medical opinion evidence" (Doc. 23, p. 5). Specifically, the plaintiff complains that the law judge did not properly assess the opinion of Dr. Jeremy Zehr, an examining psychologist (id., pp. 5-8).[3]

In June 2011, Dr. Zehr conducted a psychological evaluation of the plaintiff (Tr. 486-89). The plaintiff reported to Dr. Zehr that she has anger issues, is "quick to argue with others," and "was last able to work about 5 years ago because of her irritability and 'not getting along with others'" (Tr. 486, 487). Dr. Zehr's impression included bipolar II disorder and anxiety disorder, not otherwise specified (Tr. 489). He assigned the plaintiff a Global

---

[3] The plaintiff makes no argument concerning her physical condition. Consequently, any such contention is deemed forfeited (Doc. 16, p. 2).

Assessment of Functioning ("GAF") score of 65 (id.).[4] Dr. Zehr said (Tr. 488):

> Rapport was easy to establish. The claimant was hyperverbal and was circumstantial in her reporting of symptoms and background information. She was redirected multiple times throughout the interview to stay on the topic of conversation. She appeared to be frustrated with not being able to provide specific dates, but when pressed she could give general timelines and time frames. She also became tearful and emotional when discussing past traumatic events.

The plaintiff was alert and well-oriented, and she "had a full range of appropriate affects" (id.). Dr. Zehr indicated that the plaintiff is incapable of initiating and maintaining friendships, but her "[s]ocial life is somewhat active" (Tr. 489).

Dr. Zehr also filled out a Medical Source Statement of Ability to Do Work-Related Activities (Mental) form in which he assessed the plaintiff in a number of respects (Tr. 490-92). He opined that the plaintiff is

---

[4]The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34. A rating of 61-70 indicates "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ..., but generally functioning pretty well, has some meaningful interpersonal relationships" (id.).

moderately limited in her ability to interact appropriately with supervisors and co-workers (Tr. 491). In this connection, Dr. Zehr stated that the plaintiff's "mood instability has been an issue in previous employment settings, and are felt to be moderate impairments at the present time" (id.). With regard to other matters, the plaintiff was thought to have no or mild limitations (Tr. 490-91).

The law judge considered Dr. Zehr's opinion, and only discounted that opinion with respect to the plaintiff's ability to interact with supervisors and co-workers (Tr. 28). Thus, the law judge explained (id.):

> [O]n June 16, 2011, Jeremy Zehr, Psy.D., another disability examiner, found the claimant had a bipolar disorder, but a GAF of 65, indicating a relatively high level of functioning. At that time, the claimant stated she was not taking any psychiatric medications and she denied any suicidal ideation. Contrary to her earnings records and testimony, the claimant denied any work activity within the previous five years. She drove to the examination and was appropriately dressed and groomed, with good basic functioning and hygiene. She was alert and well oriented with no symptoms of psychosis. Her recall was demonstrated, suggesting no severe short-term or long-term memory impairment. The claimant could recall three words immediately and two words after five minutes. Her speech and thought

processes were logical and coherent, and her affect was full. The claimant had an active social life and her daily activities included caring for her dog, cooking, visiting her mother, walking and light housecleaning (Exhibit C21F).

Dr. Zehr then opined that the claimant had only mild mental health limitations apart from moderate impairments with interacting appropriately with supervisors and coworkers (Exhibit C21F). However, the undersigned gives this opinion little weight as it was based solely on the claimant's subjective allegations regarding her abilities to get along with others in previous employment settings, allegations that are inconsistent with both her previous substantial gainful activity and her current work activity.

The law judge's explanation for partially discounting Dr. Zehr's opinion is reasonable and supported by substantial evidence. Significantly, as a one-time examining consultant, Dr. Zehr's opinion is not entitled to controlling weight or special significance. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1160 (11th Cir. 2004); McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987).

The plaintiff asserts that the law judge improperly substituted his own opinion for that of Dr. Zehr (Doc. 23, p. 5). The law judge, however, did not substitute a medical opinion but instead performed his duty to assess the

evidence in accordance with the regulations. See 20 C.F.R. 404.1527, 416.927; Castle v. Colvin, 2014 WL 595284 at *4 (11th Cir.). Furthermore, the regulations provide that the determination of the plaintiff's functional limitations in assessing the plaintiff's residual functional capacity is an issue reserved to the Commissioner. 20 C.F.R. 404.1527(d)(2), 416.927(d)(2).

The plaintiff challenges the law judge's statement that Dr. Zehr's opinion regarding the plaintiff's ability to interact with supervisors and co-workers "was based solely on the claimant's subjective allegations regarding her abilities to get along with others in previous employment settings" (Doc. 23, p. 7; see Tr. 28). However, when asked to "[i]dentify the factors ... that support [his] assessment," Dr. Zehr noted that "mood instability has been an issue in previous employment settings" (Tr. 491). This conclusion is apparently based on information the plaintiff provided Dr. Zehr as part of her presenting problem and past history (Tr. 487). Thus, the plaintiff told Dr. Zehr that "[s]he was last able to work about 5 years ago because of her irritability and 'not getting along with others'" (id.). She also told him that she was fired from her last job "for not learning the job well and for having an attitude with her superiors" (id.). Dr. Zehr commented that the plaintiff

provided the personal history and it seemed reliable (Tr. 488). Thus, the law judge could reasonably conclude that Dr. Zehr's assessment of moderate limitations in the plaintiff's ability to get along with co-workers and supervisors was based on the plaintiff's subjective allegations.

Importantly, although Dr. Zehr thought the plaintiff was a reliable historian, the law judge found that the plaintiff was not fully credible (Tr. 25), and the plaintiff raises no challenge to that credibility determination. The law judge pointed out that "[c]ontrary to her earnings records and testimony, the claimant denied [to Dr. Zehr] any work activity within the previous five years" (Tr. 24). Further, she told Dr. Thomas G. Trimmer, another examining psychologist, that she stopped working because "she felt it was necessary for her to care for her special needs children" (Tr. 332).

The law judge, in addition, concluded that the plaintiff's allegations regarding her ability to get along with others is inconsistent with the plaintiff's "current work activity" (Tr. 28). That activity, which did not rise to the level of substantial gainful activity (Tr. 22-23), involved taking care of children on a part-time basis (Tr. 22). Moreover, because of the plaintiff's claims based on neck and back pain, the plaintiff emphasized that

she was not dealing with small children (Tr. 41). The law judge could reasonably think that the plaintiff's ability to supervise bigger children is inconsistent with her allegation that, due to irritability, she cannot deal with others.

The plaintiff argues that moderate limitations in her ability to interact with supervisors and co-workers is supported by Dr. Zehr's personal observations of the plaintiff (Doc. 23, p. 7). In this regard, the plaintiff points to Dr. Zehr's notations that she was hyperverbal and circumstantial in her reporting, was redirected to stay on topic, appeared frustrated, and became tearful and emotional in discussing past events (id.). These observations, however, do not support moderate limitations in interacting with supervisors and co-workers.

Moreover, the assertion that the plaintiff would have difficulty dealing with co-workers or supervisors is not supported by the record. Thus, in a function report, the plaintiff stated that she has "no problem" getting along with authority figures (Tr. 215), and she only "sometimes" has trouble getting along with others (Tr. 214). In addition, the plaintiff responded "no" and "don't remember" when asked if she had ever been fired or laid off from

a job due to problems getting along with others (Tr. 215). Further, Dr. Trimmer indicated that the plaintiff's daily activities typically include spending time with family and friends (Tr. 333).

The plaintiff next contends that "[i]t is disingenuous to disregard [Dr. Zehr's] opinion because he did not have the Plaintiff's medical records and Social Security claims file available to him at the time of the examination, when the Social Security Administration was the entity that sent the claimant out for the examination and could have easily provided him with the aforesaid records" (Doc. 23, pp. 7-8). This assertion is baseless. The law judge did not discount Dr. Zehr's opinion because the psychologist did not review the plaintiff's medical file. Rather, as indicated, the law judge partially discounted the opinion because he concluded that the limitations regarding supervisors and co-workers were based on allegations that "are inconsistent with both [the plaintiff's] previous substantial gainful activity and her current work activity" (Tr. 28).

To the extent that the plaintiff may be asserting that the law judge erred by failing to provide Dr. Zehr with her medical file, this contention is meritless. Thus, the plaintiff has not shown that Dr. Zehr's

ability to form an opinion as to her residual functional capacity was hindered by a lack of medical records. To the contrary, the plaintiff urges acceptance of Dr. Zehr's opinion.

Finally, the plaintiff complains that it is "illogical" that the law judge expressed the need for updated medical evidence at the hearing, but then discounted the opinion from Dr. Zehr (Doc. 23, p. 8). However, in violation of the Scheduling Order and Memorandum Requirements (Doc. 16, p.2), the plaintiff does not cite any legal authority supporting an obligation of the law judge to accept all of the opinions set out in Dr. Zehr's medical source statement.

Moreover, the law judge obtained additional medical evidence because the plaintiff had a recent accident (Tr. 63). In this circumstance, the most significant examination concerned the plaintiff's physical condition. The law judge most likely also obtained a mental evaluation because the accident could have affected her mental condition. There is no reason to think, however, that the plaintiff's recent accident resulted in any meaningful change in the plaintiff's ability to work with others. Consequently, it is not

illogical to obtain an additional mental evaluation and then discount an opinion in that evaluation.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 24th day of February, 2014.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE